W. A. WILLIAMSON, Executor, etc., Appellee, v. WILLIAM
ROBINSON, Appellant.

**Instruction:** BURDEN OF PROOF. Under Code, section 3639, an in-
1    struction which casts upon a defendant the burden of proving
all his defenses to an action, rather than any one of them, is
erroneous.

**Estate property:** SETTLEMENT OF CONTROVERSIES. Conceding to an
2    executor power to settle a controversy respecting estate prop-
erty without an order of court, still he cannot delegate such
power and through another effect a settlement binding upon
the estate; nor can one of several heirs effect a settlement
which will be binding upon the others.

*Appeal from Jasper District Court.*— HON. BYRON W.
PRESTON, Judge.

FRIDAY, MAY 17, 1907.

ACTION at law by plaintiff as executor of the estate of
S. D. Robinson, deceased, to recover the value of personal
property belonging to the estate, and alleged to have been
converted by defendant. From a verdict and judgment in
favor of plaintiff, defendant appeals.— *Reversed* and *re-
manded.*

*Harrah & Myers* and *McElroy & Cox,* for appellant.

*L. A. Wells,* for appellee.

BISHOP, J.— The property in dispute consists of a
team of mules, spoken of in the record as the " Hegwood
mules," a team of mules spoken of as the " Dalton mules,"
and a jack. Defendant admits his possession of the prop-
erty, and that he has refused to surrender the same to plain-
tiff. The defense pleaded is that the deceased, S. D. Rob-

inson, and the defendant were father and son, respectively; that in June, 1902, the father, then still living, proposed to make an advancement out of his property to defendant in the sum of $3,500, the same to be taken by defendant as the full measure of his interest in his father's estate; that a meeting followed, at which all matters of account growing out of previous dealings between them were adjusted, several items of personal property, including the mules in question, were agreed to be turned over to defendant at a fixed valuation, and the balance of the $3,500, ascertained to be $2,671.87, was agreed to be paid in cash. It is further pleaded that at the same time and in the same connection the jack in question was presented to defendant as a gift by his father. Defendant says that, pursuant to said settlement and arrangement, his father executed and delivered to him a bill of sale in writing for said personal property, and paid to him in money the said sum of $2,671.87; that he (defendant) took immediate possession of the Dalton mules and the jack, but not of the Hegwood mules. As to the latter, it is pleaded that they were at the time in possession of one Hegwood, and it was agreed between defendant and his father that they should be allowed to remain as they were until fall, " and, if his father in the meantime could get a better price for them than agreed upon by them, then his father was to have the benefit of such increase." It is said that no purchaser was found, and after the death of his father defendant demanded possession of the mules of Hegwood, which was refused. And defendant says that thereupon, and after negotiations with said Hegwood and the widow of the deceased, acting for herself and as agent of all the legatees under the will of the deceased, and with full knowledge and consent on the part of plaintiff, executor, entered into a settlement to avoid litigation whereby the mules were delivered into the possession of defendant; that there was paid by defendant to Hegwood $10 due him for the care of the mules, and there was given to said widow by

defendant a horse of the value of $50.   Said settlement is
pleaded in estoppel.   All of the allegations of the answer are
denied in a reply.

I.   Complaint is made of numerous rulings made in
connection with the introduction of the evidence.   We have
examined the record in respect of each of such rulings and
find no prejudicial error.   So, also, complaint is made of
the refusal of the court to give instructions to the jury as
requested.   We have examined as to these, and find that, as
far as correct in law and applicable to the case, they were
embodied in the charge given by the court.   Accordingly
there was no error.

II.   In the second instruction given, the jury was told
that the burden was upon defendant to prove the affirmative
allegations of his answer; that is, the settlement with his
father, the sale or gift to him of the property
in controversy, and the execution and delivery
of a bill of sale therefor.   This instruction
is complained of, and the burden of the contention is that
an unnecessary requirement was thereby put upon defendant,
in that he was compelled to go farther in proof than was nec-
essary to sustain his defense.   And the argument is that
under the provisions of Code, section 3639, he was only re-
quired to make proof of one defense, although in his answer
he may have alleged several.   This contention, we think,
must be sustained.   The gist of defendant's answer respect-
ing the mules is that a transfer of title thereto was made to
him by his father on sufficient consideration, and that the
transfer was accompanied by a change in possession — the
delivery of the Dalton mules being actual, and the delivery
of the Hegwood mules being constructive.   We are not called
upon in this connection to consider the effect of the agree-
ment pleaded under which the Hegwood mules were to re-
main as they were until fall.   As to the jack, the contention
is for a transfer of title under gift executed by delivery of
possession.   Here, then, were the separate defenses of pur-

1. INSTRUCTION:
   burden of
   proof.

chase as to the mules and of gift as to the jack. And it was possible for plaintiff to succeed on proof of the purchase, although he might fail in proof of the gift, and vice versa. It is true that defendant pleaded the execution and delivery of a bill of sale in evidence of both the sale and the gift. But a bill of sale is no more than evidence, and it was possible for defendant to succeed on proof of the bill of sale, or in virtue of evidence *aliunde.* His case was made out from which ever source came the evidence. And it is not to be charged against him that he alleged more than was necessary to sustain his defense of ownership. A party litigant will not be deemed to have failed simply because he has not gone beyond the limit of the proof required in law to establish his case. This is no more than to say that a party is not required to prove the unnecessary averments of his pleading. *Knapp v. Cowell,* 77 Iowa, 528; *Schrader v. Hoover,* 80 Iowa, 243. It follows from what we have said that the instruction complained of must be condemned as error; and, without setting them forth, we may add that the error was not overcome by the other instructions given.

III.  In view of a further trial of the case, one other instruction complained of may be noticed. In the course of the charge the court withdrew from the consideration of

2. ESTATE PROP-
ERTY: settle-
ment of con-
troversies.

the jury the matter of the settlement alleged in the answer to have been had by defendant with plaintiff and the widow of the deceased respecting the Hegwood mules. Looking into the evidence, these are the facts on defendant's own showing. He says that he went to plaintiff, executor, and asked " if I had a right to settle with the widow, and he said I had, and that anything she and I did would be all right with him; that he did not want to have any trouble about it." And he says that thereupon he went to the widow and proposed to give her a pony for the use of her boy, and to settle with Hegwood for the amount claimed by him, if she would relinquish her claim on the mules, and to this she consented;

that he delivered to her the pony, and then went to Heg-wood and paid him and took the mules. It is not pretended in the evidence that the widow had any authority to act for the other legatees in the will. Even if the executor had power, in the absence of an order of court granting author-ity, to settle a matter in controversy respecting the property of the estate in his charge, still he could not bind the estate by any delegation of that power. And, should we concede that all persons interested in an estate could get together and by mutual agreement make a disposition of all or any por-tion of the assets thereof, still on plainest principles the act of one of such interested persons acting alone could not be recognized as having any validity.

For the error in the second instruction given, as we have pointed it out, there must be a new trial, and the case will be remanded for that purpose.— *Reversed.*